UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DANA GISONDI, on behalf of M.E.G.,
    - Plaintiff

    v.                                            CIVIL NO. 3:06CV00968 (VLB)(TPS)

MICHAEL J. ASTRUE[1],
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
    - Defendant

## RECOMMENDED RULING

The plaintiff, Dana Gisondi, on behalf of her minor son, M.E.G., brings this appeal under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final determination by the Commissioner of the Social Security Administration ("Commissioner") that her son is not disabled within the meaning of the Act and is therefore ineligible for Supplemental Security Income ("SSI") benefits. The plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, for an order remanding the case for further proceedings. (Dkt. #23). The Commissioner has moved for an order affirming the decision. (Dkt. #24). For the reasons set forth below, the

---

[1]Michael J. Astrue became the Commissioner of Social Security effective February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the court substitutes Michael J. Astrue as the defendant in this action.

1

plaintiff's motion for remand should be **GRANTED**.  The parties' competing motions for judgment should be **DENIED**.  (Dkts. ## 23, 24).  28 U.S.C. § 636(b)(1)(A).

## I. Childhood Disability Standard

A child under eighteen years of age is disabled under the Act if the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

Determining whether a child is disabled involves a three-step analysis.  First, the ALJ considers whether the child is engaged in "substantial gainful activity."  Second, if the child is not so engaged, the ALJ considers whether the child has "an impairment or combination of impairments that is severe."  Third, if a severe impairment is found, the ALJ must consider whether the impairment "meets, medically equals, or functionally equals the listings."  20 C.F.R. § 416.924(a)-(d).  With regard to functional equivalence, the ALJ assesses the child's level of functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  A child's impairment is considered functionally equal to a listed impairment if it results in an

2

extreme limitation in one domain or marked limitations in at least two domains. 20 C.F.R. § 416.926a and (b)(1).

## II. Background

M.E.G. was born in 2002, with a congenital deformity of his left leg. (Tr. 156-57). His condition was later diagnosed as a severe form of Proximal Femoral Focal Deficiency ("PFFD"). As a result of this condition, M.E.G. has no left hip joint, femur, knee joint or fibula. He is dependent on a prosthesis to walk. (Tr. 302-04). M.E.G. has received physical and occupational therapy to develop his ability in using a prosthesis. He also has attended speech therapy for delayed speech development. (Tr. 167-259, 263-276, 295-98).

The plaintiff applied for SSI benefits on behalf of M.E.G. on March 25, 2004, alleging that he has been disabled since his birth. (Tr. 57-65). In describing her son's limitations, the plaintiff indicated that he is "unable to walk without [a] prosthesis," "unable to walk [a] distance," "unable to run," and that he requires "constant assistance." (Tr. 83). The plaintiff's application for benefits was denied initially on July 15, 2004. (Tr. 25-29). In September, 2004, the plaintiff requested reconsideration of the denial of benefits, alleging that her son suffered from an additional impairment of delayed speech development. (Tr. 30, 104-10). Her application was denied again on reconsideration. (Tr. 32-35). Thereafter, the plaintiff

3

requested a hearing, which took place on September 20, 2005 before an Administrative Law Judge ("ALJ"). (Tr. 36, 306-341).

At the hearing, the plaintiff, appearing pro se, testified as to M.E.G.'s condition. She testified that her son cannot keep up with his peers and often sits out of activities. (Tr. 337). She explained that her son has tried a number of prosthetic devices, but that he experiences irritation, sores and skin breakdown if he wears a prosthesis for more than three to four hours per day. (Tr. 318, 320-21). She further indicated that it has become increasingly difficult to fit him with a prosthesis as he grows and becomes heavier. (Id.).

Dr. John W. Axline, an orthopedist, also testified as a medical expert based on his review of the evidence in the record. (Tr. 55, 325). He diagnosed M.E.G.'s condition as Phocomelia, a condition causing a shortened limb with impaired function. (Tr. 325). He stated that he had been exposed to and was familiar with the type of deformity that M.E.G. presents, but that he had never treated a patient with his condition. (Tr. 326-27). In discussing treatment options, he explained that it can be difficult to fit a child with a prosthesis because the devices are not durable. (Tr. 328-29). In Dr. Axline's opinion, M.E.G.'s condition did not meet or medically equal a listed impairment. (Tr. 330). With regard to the functional equivalence of M.E.G.'s condition to a listed impairment, Dr. Axline testified that M.E.G. had a marked

4

impairment in the domain of moving about and manipulating objects. (Tr. 332-33). In the remaining domains, he concluded that M.E.G. had either no functional limitations or less than marked functional limitations. (Tr. 331-35).

The administrative record before the ALJ included reports by several pediatric orthopedists, including physicians at Shriners Hospitals for Children, as well as treatment notes from M.E.G.'s pediatricians, Dr. Uwe Koepke and Dr. Lorraine Braza, that are largely indecipherable. There were also assessments and copious progress notes from M.E.G.'s occupational, physical and speech therapists. In addition, three state agency physicians submitted reports to Disability Determination Services ("DDS"). Two non-examining physicians, Dr. Stevens and Dr. Carol R. Honeychurch, determined that M.E.G. had a severe impairment that did not meet or equal a listed impairment. (Tr. 119-24, 282-89). A third physician, Dr. Jeffrey Cersonsky, examined M.E.G. and reported to DDS that he exhibited good motor capabilities, but noted that he is hindered by the deformity of his left leg. Dr. Cersonsky further indicated that M.E.G. may eventually need a structured setting. (Tr. 293-94).

On January 27, 2006, the ALJ determined that M.E.G. was not disabled. (Tr. 14-22). Applying the analysis for childhood disability claims, the ALJ first determined that M.E.G. had not engaged in substantial gainful activity. (Tr. 15). Next, he found

5

that M.E.G. suffered from a severe physical impairment. (Id.). Third, he concluded that M.E.G.'s impairment did not meet or medically or functionally equal a listed impairment. (Tr. 17-21). With regard to functional equivalence, the ALJ found only a marked limitation in the domain of moving about and manipulating objects. (Tr. 19).

The plaintiff sought review by the Appeals Council. When doing so, she supplemented the record with a report from a September 1, 2005 visit to Shriners Hospital for Children in Philadelphia. (Tr. 5-8, 302-06). The Appeals Council denied the plaintiff's request for review on April 13, 2006, rendering the decision of the ALJ the final decision of the Commissioner. (Tr. 5-8, 9-10). The plaintiff now appeals the Commissioner's decision denying her claim for SSI benefits on behalf of her son. The plaintiff is represented by counsel on appeal.

**III. Discussion**

In reviewing a final decision of the Commissioner denying social security benefits, the court must determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Before deciding whether a benefits determination is supported by substantial evidence, however, a court must "be satisfied that the claimant has had a full hearing under the

6

Secretary's regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).

The plaintiff contends that her son is entitled to SSI benefits because his condition is functionally equivalent to a listed impairment, specifically with respect to the domains of moving about and manipulating objects and health and physical well-being. (Dkt. #23, P's Mem. in Supp. at 10, 25-27). The Commissioner responds that the decision of the ALJ is based on a correct application of the law and supported by substantial evidence. (Dkt. #24, D's Mem. in Opp. at 19-21). Because the ALJ failed to fully develop a complete and fair record, it is recommended that this case be remanded to the agency for further proceedings.

It is well-settled that the ALJ has an affirmative duty to develop the administrative record given the non-adversarial nature of disability benefits proceedings. See Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). Where, as here, the plaintiff is unrepresented by counsel, "the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id. at 755. "Reasonable efforts" in pro se cases may include advising the claimant of the need for additional evidence and/or of the right to call treating physicians as witnesses as well as issuing and

7

enforcing subpoenas. See e.g., Jones v. Apfel, 66 F. Supp. 2d 518, 538-41 (S.D.N.Y. 1999). Failure to assist a pro se plaintiff in fully developing the record is grounds for a remand. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

The relevant provisions of the Secretary's regulations provide that the agency will compile a complete medical history for at least a twelve-month period prior to the date of application and re-contact treating physicians if the evidence received is inadequate to make a determination as to disability. 20 C.F.R. § 416.912. The opinion of a treating physician is given controlling weight if "well supported by the medical findings and not inconsistent with other substantial evidence." See Rosa, 168 F.3d at 78-79 (2d Cir. 1999). In view of the importance of a treating physician's opinion, courts in this circuit have held that, in cases involving pro se plaintiffs, the ALJ must "make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." See Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).

The Commissioner argues that the plaintiff has not demonstrated that the ALJ failed to obtain any medical records that would support her son's claim. (D's Mem. in Opp. at 13-14). The Commissioner's argument is unavailing. It is clear from the

regulations and the case law that it was incumbent upon the ALJ to take reasonable steps to fill the significant evidentiary gaps that existed in the record before him. He failed to do so.

First, the ALJ did not fulfill his duty to ensure a complete medical record before rendering his decision to deny benefits. In fact, the most current records before the ALJ were one page of treatment notes dated March, 2005 from Dr. Braza, submitted by the plaintiff at the hearing. At that time, the plaintiff explained to the ALJ that the records of Dr. Braza, M.E.G.'s pediatrician until June, 2005, had been forwarded to his new pediatrician, Dr. Claire A. Free. (Tr. 313). The plaintiff also informed the ALJ that M.E.G. had been to Shriners Hospital for Children in Philadelphia a few weeks earlier, on September 1, 2005, at which time it was determined that he would be fitted with a newly designed prosthesis, but that she had not yet received the records from that visit. (Tr. 319-20). The ALJ stated that he would attempt to obtain the records from Shriners Hospital and Dr. Braza. (Tr. 338, 340). There is, however, no evidence in the record that he did so.[2] See Jones, 66 F. Supp. 2d at 524 (ALJ must document attempts made to develop the record). There is further no indication that, prior to rendering his decision in January, 2006, the ALJ attempted to obtain a more current medical history beyond March, 2005.

---

[2]The September 1, 2005 report from Shriners Hospital was submitted by the plaintiff to the Appeals Council and made part of the record at that point in the proceedings. (Tr. 8, 302-05).

9

Additionally, in September, 2004, Dr. Keopke completed a DDS medical questionnaire with attached documentation describing his findings as to M.E.G.'s physical condition and development. (Tr. 290-92). The attached documentation is not included in the record. Dr. Keopke also was asked to complete an assessment of M.E.G.'s functional limitations, which is similarly not included in the record. (Tr. 290). The ALJ's decision does not reference any conclusions by Dr. Keopke nor is there any indication that the ALJ attempted to obtain this documentation, which presumably was missing from the record.

Second, notably absent from the record is any opinion by a treating physician regarding M.E.G.'s condition and level of functioning nor is there any evidence that the ALJ sought such an opinion. In fact, the bulk of the record consists of progress notes and evaluations by M.E.G.'s physical and occupational therapists. The evidence from M.E.G.'s treating physicians is limited to treatment notes and reports that document physical findings, diagnoses and treatment recommendations.

In determining whether M.E.G.'s condition meets or medically equals a listed impairment, the ALJ was required to consider whether M.E.G. suffers from an inability to ambulate effectively, defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper

extremities." 20 C.F.R. § 404.1525, Appendix 1, Part B, 101.00(B)(2)(b).[3] In determining the functional equivalence of his impairment, the ALJ was required to consider the effect of M.E.G.'s impairment on his functioning and whether he experiences limitations and restrictions as a result of his condition. 20 C.F.R. § 416.924a(b). In cases in which a child uses a prosthetic device, a child's level of functioning is evaluated with consideration of the degree to which the prosthetic device enables the child to function compared to other children who do not have impairments, the ability of the child to use the prosthetic device on a sustained basis, and any functional limitations that persist. 20 C.F.R. § 416.924a(b)(5)(iii). The record before the ALJ inadequately addressed the foregoing.

In reaching his decision, the ALJ principally relied on the testimony of Dr. Axline and the disability evaluations of Dr. Stevens and Dr. Honeychurch, all non-treating, non-examining physicians. Generally, the opinions of non-examining physicians are afforded less weight than a treating or consulting physician's opinion in the evaluation of disability. See e.g., Yoxall v. Apfel, No. 3:99-CV-656 SRU, 2001 WL 539608, at *11 (D. Conn. 2001). Moreover, given the limited record in this case, the non-examining physicians largely based their conclusions as to M.E.G.'s

---

[3] Listing 101.00 applies to disorders of the musculoskeletal system.

11

functioning on statements contained in the treatment notes of Dr. Keopke and the progress notes and evaluations of M.E.G.'s physical and occupational therapists. Specifically, Dr. Stevens and Dr. Axline referred to a notation in Dr. Keopke's notes that M.E.G. "walks well." (Tr. 124, 141, 333). This statement, however, falls far short of an evaluation of M.E.G.'s functional ability. Additionally, Dr. Stevens and Dr. Honeychurch both supported their functional evaluations with observations documented by M.E.G.'s therapists, including that M.E.G. can "walk independently" around his apartment, "walk up and down stairs with support" and is "learning to climb steps on the playground appartus." (Tr. 122, 168, 190, 285). The therapists' reports and observations are of limited value in assessing M.E.G.'s overall functioning; they merely describe the activities that M.E.G. is physically capable of performing without providing an indication of his ability to perform these activities on a sustained basis or in comparison to other children his age. The opinions of the non-examining physicians, drawn from an inadequate record, cannot constitute the substantial evidence required to support the ALJ's decision. See Pratts v. Charter, 94 F.3d 34, 38 (2d Cir. 1996). The ALJ had a responsibility to develop the record further and to seek from M.E.G.'s treating physicians, who developed a treatment relationship with him and whose opinions would be entitled to controlling weight, their evaluation of his condition and

functional limitations.  See Rosa, 168 F.3d at 78-79; Peed, 778 F. Supp. at 1246.  This is particulary true with respect to the physicians at Shriners Hospital, who are specialists in PFFD and who fitted M.E.G. with different prosthetic devices, as well as his pediatricians, Dr. Keopke, who treated him until March, 2004, Dr. Braza, who treated him until June, 2005, and Dr. Free, who referred him to physical and speech therapy in 2005 as evidenced by records submitted by the plaintiff at the hearing.

**IV. Conclusion**

Remand is the appropriate remedy when further development of the record is necessary and "further findings would . . . plainly help to assure the proper disposition of [the] claim."  See e.g., Rosa, 168 F.3d at 82-83.  It is therefore recommended that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

On remand, the ALJ must further develop the record with respect to M.E.G.'s functional ability.  To this end, the ALJ must attempt to obtain complete medical records from M.E.G.'s treating physicians.  The ALJ must further seek to obtain the opinions of M.E.G.'s treating physicians as to the severity of his PFFD and its impact on his level of functioning in order to determine whether his impairment meets or equals a listed impairment.  The court notes that the plaintiff has submitted a letter from Dr. Carol A. Free, M.E.G.'s current pediatrician, dated September 14, 2007.

13

(P's Appendix, Exh. 14). In this letter, Dr. Free briefly describes the nature of M.E.G.'s impairment and its physical manifestations. The ALJ should request from Dr. Free a more detailed assessment, supported by her clinical findings, of M.E.G.'s physical condition and his ability to perform age-appropriate activities. In addition to the opinions of M.E.G.'s treating physicians, the opinions of his other treating sources, namely his therapists and prosthetists, may be probative of his alleged disability. Finally, the ALJ must document any attempts made to develop the record.

Plaintiff's motion for remand should be **GRANTED** (dkt. #23) and the competing motions for judgment (dkts. ## 23, 24) should be **DENIED**. Either party may timely seek review of this recommended ruling in accordance with Rule 72 (b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F. 2d 15, 16 (2d. Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 3rd day of June, 2008.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**